UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————x

DORA AMPONG,

                Plaintiff,

           No. 21-CV-02049 (CM)

      -against-

COSTCO WHOLESALE CORP.,

                Defendant.

——————————————————————x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/25/2023

## MEMORANDUM ORDER AND DECISION DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

McMahon, J.

    On December 16, 2022, Costco Wholesale Corp. ("Defendant") filed a motion to dismiss this removed action, which had originally been filed by Plaintiff Dora Ampong ("Plaintiff"), a Bronx resident, in the New York State Supreme Court (Bronx County). The action arises out of a slip and fall that occurred at the Port Chester Costco Warehouse ("the Warehouse") on December 19, 2019.

    Defendant answered the Complaint and the case proceeded through discovery. Following the close of discovery, Defendant moved for summary judgment of dismissal pursuant to Fed. R. Civ. P. 56. (*See* Dkt. No. 76). The motion is opposed.

    For the following reasons, Defendant's motion for summary judgment is denied.

1

## **FACTUAL BACKGROUND[1]**

On December 19, 2022 at approximately 10:00 a.m., Plaintiff entered the Port Chester Costco Warehouse while looking towards an employee checking membership cards to her right. (Dkt. No. 79, at ¶ 1; Dkt. No. 82-1, at ¶ 9). She tripped when her left foot came into contact with a television display. (Dkt. No. 82-1, at ¶ 67). The television display, along with a rolled-up carpet, had been placed immediately adjacent to the left side of the doorway by Defendant's employees. (Dkt. No. 82-1, at ¶¶ 36-37, 41). After Plaintiff fell, her foot was touching the carpet. (Dkt. No. 82-1, at ¶ 69). Plaintiff then submitted a "Member First Incident Report" in which she stated that she had tripped on the carpet. (Dkt. No. 82-1, at ¶ 17).

In her initial complaint, filed on December 8, 2020, Plaintiff asserted that her accident was caused by Defendant's and its employees' negligence in the "ownership, leasing, operation, maintenance, control and management of [the Warehouse]" and that Defendant "should have known of the dangers and hazards there existing and nonetheless failed to remedy same." (Dkt. No. 1-1, at ¶ 8). Later, in her (1) February 22, 2021 Verified Bill of Particulars, (2) June 23, 2021 Response to Defendant's First Request for Interrogatories, (3) August 25, 2021 Supplemental Response to Defendant's First Request for Interrogatories, and (4) March 7, 2022 deposition, Plaintiff asserted more specifically that the carpet had caused her to trip. (*See* Dkt. No. 77-4, at ¶¶ 4-5; Dkt. No. 77-6, at ¶¶ 5-6; Dkt. No. 77-7, at ¶¶ 5-6; Dkt. No. 77-8, at 22:19-21).

Defendant did not provide Plaintiff with a video of the incident until shortly after her March 7, 2022 deposition. (*See* Dkt. No. 77-16). Contrary to her persistent assertion that her fall had been caused by the carpet, the video showed that Plaintiff had tripped on the television stand. (Dkt. No. 77-12). Citing the video, Defendant asked Plaintiff to voluntarily dismiss her action.

---

[1] Unless specifically noted otherwise, the facts contained in this section are undisputed and are drawn from the parties' Rule 56.1 statement of undisputed facts and response statement. (See Dkt. Nos. 79, 82-1).

When Plaintiff refused, on August 1, 2022, Costco advised Plaintiff of its intention to move for summary judgment. (Dkt. No. 77-16).

On August 18, 2022, in a Corrected/Supplemental Response to Defendant's First Request for Interrogatories ("Corrected Response"), Plaintiff's counsel stated, "Upon reviewing the video of the accident provided by the Defendant, it is apparent that Plaintiff's left foot was caused to trip on the tv display/tv stand, and she was caused to fall onto a rolled-up rug placed near the tv display/tv stand." (Dkt. No. 77-17, at ¶ 6) Plaintiff accused Defendant of negligence in creating a tripping hazard in the warehouse entrance through its placement or installation of the television display. (Dkt. No. 77-17, at ¶ 5).

Four months later, on December 16, 2022, Defendant moved for summary judgment. (Dkt. No. 76).

## STANDARD

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant[s] [are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. At summary judgment, the movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004).

Once the movants meet that burden, the non-movants may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 248; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). To survive summary judgment, the non-movants must present concrete evidence and rely on more than

conclusory or speculative claims. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). In assessing the record to determine whether genuine issues of material fact are in dispute, a court must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Parkinson v. Cozzolino,* 238 F.3d 145, 150 (2d Cir. 2001).

## DISCUSSION

**I.     Plaintiff's corrected theory of negligence does not violate the "sham affidavit" principle.**

After viewing the video, Plaintiff changed her theory of how the accident occurred from "I tripped on the carpet," to "I tripped on the TV stand and fell so that my foot was touching the carpet." Defendant argues that this change of theory contradicts her deposition testimony and so violates the "sham affidavit" principle. (Dkt. No. 78, at 3). It asserts that the Court may only consider Defendant's earlier assertion that the carpet caused her fall, and since video evidence clearly shows that the carpet did not cause the fall, summary judgment should be granted.

Defendant is oh, so very wrong.

"A party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) (citing *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Perma*, 410 F.2d at 578. Therefore, "factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes*, 84 F.3d at 619 (quoting *Perma*, 410 F.2d at 578).

4

There are two exceptions to the "sham affidavit" principle. The first exception – the rule does not apply if the affidavit does not actually contradict the prior testimony, *see, e.g., White v. ABCO Engineering, Corp.*, 221 F.3d 293, 304 (2d Cir.2000). – does not apply here, since Plaintiff's new theory of recovery plainly contradicts her deposition testimony, which was that she tripped on the carpet. (*See* Dkt. No. 77-8, at 51:6-17).

However, the rule also does not apply if the party's prior "testimony is contradicted by evidence other than the deponent's subsequent affidavit." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 43 (2d Cir. 2000). In *Corio*, the Second Circuit held that the sham affidavit principle does not apply where the information in an affidavit that contradicts prior deposition testimony is supported by additional evidence, because "when such other evidence is available, the concern that the proffered issue of fact is a mere 'sham' is alleviated." *Id.* at 44. That exception governs this case.

In *Corio*, the Second Circuit held that the sham affidavit principle did not bar a defendant from offering testimony at an evidentiary hearing that contradicted his earlier sworn statement, because the testimony was supported by supporting documentary evidence. *Id.* The court noted that, "To the extent that there is a conflict in a witness's testimony, such a conflict affects the weight of the testimony, not its admissibility. *Id.* (citing *United States v. Rodriguez*, 968 F.2d 130, 143 (2d Cir.) *cert. denied*, 506 U.S. 847 (1992)).

Here, Plaintiff's updated contention that she tripped on the television display rather than the rug is supported by video of the incident, which shows that the Plaintiff tripped on the TV stand and went down with her foot touching the carpet. (Dkt. No. 77-12; Dkt. No. 77-14). The video supports the contention that Plaintiff could have plausibly been mistaken about what caused her fall, which "furnish[es] a good faith basis for the inconsistency" with her prior

5

testimony. *Id.*, (quoting *Delaney v. Deere & Co.*, 219 F.3d 1195, 1196 n. 1 (10th Cir.2000)). Given the circumstances shown on the video, Plaintiff could well have thought that she tripped on the carpet, even though it is now clear that she tripped on the TV stand. That being so, Plaintiff's change of contention "was not a naked attempt to escape the consequences of [her] earlier deposition . . . ," and there is "little danger" that the Corrected Response was a "sham." *Aboeid v. Saudi Arabian Airlines Corp.*, No. 10-CV-2518 WFK VVP, 2013 WL 3340475, at \*9 (E.D.N.Y. July 2, 2013).

Indeed, what this court sees here is a "naked attempt" by Defendant Costco to manufacture a "sham affidavit" motion in the hope of avoiding liability on a technicality. Defendant was at all times fully aware of how the accident occurred because it had the video in its possession. The video plainly qualifies as Rule 26 discovery; it should have been turned over to the Plaintiff immediately. Instead, Defendant sought a protective order from Magistrate Judge Aaron to avoid complying with its Rule 26 obligations until after Plaintiff testified to the version of events she believed to be true. As soon as Plaintiff told her story under oath, Defendant demanded that she withdraw her complaint – even though the video does not absolve Defendant of liability, since it shows Plaintiff tripping over something that was placed in the Defendant's store. There is little doubt in the court's mind that this whole scenario was manufactured by Costco so that it could make a summary judgment motion on "sham affidavit" grounds. This court will not permit Defendant to profit by its "gotcha" litigation tactics.[2]

Additionally, the "sham affidavit" principle is inapplicable because Plaintiff's self-contradictory statements were made well before the close of discovery, and four months before

---

[2] I gave this case to Judge Aaron for pre-trial management, so I cannot complain about his decision to enter the protective order. But had I been running the show, the Defendant would never have been allowed to manufacture this motion; it would have been required to turn over all Rule 26 discovery without any postponement, so this case could be litigated from the get go with everyone on the same page about the facts.

Defendant moved for summary judgment. The "sham affidavit" principle is founded on the premise that the utility of summary judgement is "compromised where a party, after having been examined on an issue and in that examination setting forth one version of facts, contradicts his own testimony in an affidavit or declaration submitted only after discovery is closed and in response to the other side's motion for summary judgment." *Savarese v. City of New York*, 547 F. Supp. 3d 305, 328 (S.D.N.Y. 2021), appeal withdrawn, No. 21-1883, 2022 WL 351054 (2d Cir. Jan. 14, 2022). Affidavits which are submitted after the close of discovery and in response to a summary judgment motion are more likely to be "shams" because non-movants have little opportunity to challenge factual assertions made at this stage. This concern is not pertinent here, where Plaintiff submitted her Corrected Response well before the close of discovery and months before the motion for summary judgment was made. *Id.* at 329. Defendant had the opportunity to question Plaintiff at length regarding the inconsistency between her prior statements and the Corrected Response during the second session of her deposition, which took place on September 23, 2022. (*See* Dkt. No. 77-18, at 74:3-75:20). The "utility of summary judgement as a procedure for screening out sham issues of fact" *Perma*, 410 F.2d 572, 578 (2d Cir. 1969) is not threatened by consideration of Plaintiff's amended response to interrogatories.

For these reasons Plaintiff's change of theory arguing that she tripped on the television stand rather than on the carpet where her foot landed, as shown in the video, does not violate the sham affidavit principle and will be deemed her theory of the case going forward.

Defendant argues in the alternative that Plaintiff's initial complaint was too vague to provide Defendant with notice of the theory that her injury was caused by the television stand. Defendant relies on *Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 702 (2d Cir. 2010), in which the Second Circuit affirmed a district court's decision to decline to consider the plaintiff's new

theories of negligence which were presented after defendant moved for summary judgment. After dismissing plaintiff's original failure to warn and failure to inspect based negligence claims, the judge refused to consider his belated assertions that, "(a) the Nissan vehicle that allegedly injured him was "over-restrained," such that it inched forward when plaintiff removed the chock straps securing it . . . . and (b) it was too dark for him to see the license plate holder" on the grounds that Defendant did not have proper notice of these negligence claims. *Id.* at 701; *See also Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006) (declining to consider an argument raised for the first time in opposition to summary judgment because "the central purpose of a complaint is to provide the defendant with notice of the claims asserted against it....").

The case at hand differs from *Lyman* for two reasons. First, as discussed above, Defendant updated her theory of negligence well before Plaintiff moved for summary judgment. Second, Plaintiff's initial complaint was sufficient to provide Defendant with notice of the potential claim regarding the television stand. Plaintiff's complaint asserted that her fall was caused by "the negligence of the defendants, their agents, servants and employees, in the ownership, leasing, operation, maintenance, control and management" of the Warehouse and that they failed to remedy "dangers and hazards there existing." (Dkt. No. 1-1, at 3). Additionally, Defendant's claim is virtually identical whether she alleges the carpet or the television stand caused her fall, especially considering the proximity of the two items and Defendant's admission that its employee's placed both items by the doorway.

Finally, because Defendant has had a video of the incident and could see exactly what happened from Day One, it can hardly claim to the burden that the defendant in *Lyman* would have faced had it been required to respond to entirely new theories of negligence that were

8

asserted for the first time in Plaintiff's response to a motion for summary judgment. The very fact that Defendant argues lack of notice, when it and it alone had complete notice of how the accident actually occurred, pushes the boundaries of fair play with the court.

And so we consider whether Costco's motion for summary judgment should be granted. Obviously, it should not.

## II.  Plaintiff has established a prima facie case of negligence.

New York substantive law applies to this diversity action. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). Under New York law, a possessor of land has a duty to use reasonable care to keep premises in a reasonably safe condition. *Basso v. Miller*, 40 N.Y.2d 233, 241 (1976). In order to prove a breach of duty in a slip-and-fall action, a plaintiff must show that the defendant "created the condition which caused the accident or that the defendant[ ] had actual or constructive notice of the condition." *Gaeta v. City of N.Y.*, 624 N.Y.S.2d 47, 48 (2d Dep't 1995); *see also Voss v. D & C Parking*, 299 A.D.2d 346, 346, 749 N.Y.S.2d 76, 77 (2d Dep't 2002).

Here, Defendant concedes that its employees placed the television display by the warehouse entrance. (Dkt. No. 84, at ¶ 41). Rather than deny creation or notice of the allegedly dangerous condition, Defendant asserts that it did not breach its duty to Plaintiff because (1) the placement of the television stand was not a dangerous condition, (2) the television stand was open and obvious, and (3) Plaintiff's inattentiveness was the sole proximate cause of her injury. These assertions, if taken as true, would defeat Plaintiff's case as a matter of law. However, each of these is an issue of fact, which must be resolved by a jury.

First, Defendant asserts that Plaintiff has not provided evidence to establish that the television display created a dangerous condition. (Dkt. No. 78, at 9). Under New York state law, "a property owner may not be held liable for trivial defects . . . over which a pedestrian might

9

merely stumble, stub his or her toes, or trip." *Turuseta v. Wyassup-Laurel Glen Corp.*, 91 A.D.3d 632, 633, 937 N.Y.S.2d 240, 242 (2012); *See also Hagood v. City of New York*, 13 A.D.3d 413, 785 N.Y.S.2d 924 (2004). However, "whether a dangerous or defective condition exists on the property of another so as to create liability depends on the peculiar facts and circumstances of each case and is generally a question of fact for the jury." *Leem v. 152-24 N., LLC,* 201 A.D.3d 918, 919, 157 N.Y.S.3d 749, 749 (2022) (*quoting Trincere v. County of Suffolk,* 90 N.Y.2d 976, 977, 665 N.Y.S.2d 615, 688 N.E.2d 489(1997)). Courts must consider "width, depth, elevation, irregularity and appearance of the defect along with the time, place, and circumstance of the injury." *Trincere*, 90 N.Y.2d at 978. The totality of the circumstances must generally be evaluated on a case-by-case basis, as "there is no 'minimal dimension test' or per se rule that a defect must be of a certain minimum height or depth in order to be actionable." *Id.*, at 977.

Defendant argues that this Court should rule that the television display was not dangerous as a matter of law. It cites testimony by one of its employees asserting that the television stand did not extend beyond the wall against which it was placed. (Dkt. No. 78, at 13; Dkt. No. 77-19, at 76:15-18). Plaintiff asserts in her opposition to summary judgement that the television display did extend beyond the wall, though she does not cite any supporting evidence. (Dkt. No. 82-2, at 7). Regardless, this issue is properly left to the jury, because whether or not the television stand extended beyond the wall may or may not prove determinative alone. *Trincere*, 90 N.Y.2d, at 978.

Second, Defendant argues that any danger posed by the television display was open and obvious, and that it did not have a duty to address a hazard which plaintiff could have avoided by reasonable care. Plaintiff correctly asserts that open and obviousness does not absolve Defendant of its duty to maintain safe premises. Open and obviousness "without more go[es] at most to

10

comparative negligence." *Borley v. United States*, 22 F.4th 75, 82 (2d Cir. 2021); *see also Baran v. Port Auth. of N.Y. & N.J.*, 196 A.D.3d 674, 148 N.Y.S.3d 685, 686 (2d Dep't 2021); *Holly v. 7-Eleven, Inc.*, 40 A.D.3d 1033, 834 N.Y.S.2d 870, 870 (2d Dep't 2007). "[E]ven if a hazard qualifies as 'open and obvious' as a matter of law, that characteristic merely eliminates the property owner's duty to warn of the hazard, but does not eliminate the broader duty to maintain the premises in a reasonably safe condition." *Westbrook v. WR Activities-Cabrera Markets*, 5 A.D.3d 69, 70, 773 N.Y.S.2d 38, 40 (2004). However, "a court is not 'precluded from granting summary judgment to a landowner on the ground that the condition complained of by the plaintiff was both open and obvious and, as a matter of law, was not inherently dangerous' " *Powers v. 31 E 31 LLC*, 123 A.D.3d 421, 422, 998 N.Y.S.2d 23, 25 (2014) (*citing Burke v. Canyon Rd. Rest.*, 60 A.D.3d 558, 559, 876 N.Y.S.2d 25 (2009), *quoting Cupo v. Karfunkel*, 1 A.D.3d 48, 52, 767 N.Y.S.2d 40 (2003).

Because summary judgment requires a finding of *both* inherent dangerousness and open and obviousness, and because the question of the television stand's dangerousness is disputed, I need not consider Defendant's assertion that the hazard created by the television display was open and obvious as a matter of law. However, Plaintiff disputes the television display's open and obviousness, and "the question of whether a condition is open and obvious is generally a jury question, and a court should only determine that a risk was open and obvious as a matter of law when the facts compel such a conclusion." *Westbrook v. WR Activities-Cabrera Markets*, 5 A.D.3d 69, 72, 773 N.Y.S.2d 38, 41 (2004). Here, the facts do not compel such a conclusion.

Defendant claims that the television stand was open and obvious as a matter of law because it "was visible to plaintiff the moment she entered the store" and because Plaintiff must have become aware of it on her weekly visits to the store. (Dkt. No. 78, at 14). Plaintiff testified

11

that she did not know about the television stand before her accident, creating an issue of material fact. Even if Plaintiff's awareness of the display was undisputed, awareness of a dangerous condition is only one factor for the jury to consider and is insufficient to support a finding of open and obviousness as a matter of law. *Nardi v. Crowley Marine Associates, Inc.*, 292 A.D.2d 577, 741 N.Y.S.2d 246 (2d Dep't 2002); *Richards v. United States*, 170 F.Supp.2d 423 (S.D.N.Y.2001).

Defendant also claims the television stand was open and obvious as a matter of law because it was over five feet tall and because a video was playing on the screen. A jury could reasonably disagree. "The nature or location of some hazards, while they are technically visible, make them likely to be overlooked." *Westbrook*, 5 A.D.3d at 72.

Finally, Defendant asserts that it cannot be liable for Plaintiff's injuries as a matter of law because "plaintiff's inattentiveness was the sole proximate cause of her accident." (Dkt. No. 78, at 16).

Generally, "[p]roximate cause is a jury question." *Nowlin v. City of New York*, 81 N.Y.2d 81, 89, 612 N.E.2d 285, 289 (1993). However, "proximate cause may be decided as a matter of law where only one conclusion may be drawn from the established facts." *Kalland v. Hungry Harbor Assocs., LLC*, 84 A.D.3d 889, 889, 922 N.Y.S.2d 550, 551 (2011).

Defendant invokes a number of cases to support its contention that inattentiveness while walking is always the proximate cause of a plaintiff's subsequent accident, but none is on point. One of these plaintiffs walked backwards into oncoming traffic. *Boereau v. Scott*, 140 A.D.3d 687, 688, 33 N.Y.S.3d 340, 341 (2016). Another walked without looking into an open and obvious obstacle that he conceded he had seen while approaching from 100 feet away. *Pinto v. Selinger Ice Cream Corp.*, 47 A.D.3d 496, 497, 850 N.Y.S.2d 70, 71 (2008). Another was not

12

walking at all, but rather was sitting next to a subway track with his back turned to oncoming trains. *Feng v. Metro. Transp. Auth.*, 285 A.D.2d 447, 448, 727 N.Y.S.2d 470, 471 (2001).

Viewed in the light most favorable to the non-moving party, the evidence here supports findings of proximate cause other than Plaintiff's own negligence. Contrary to Defendant's assertions, a plaintiff's failure to look where she is walking might suggest comparative negligence but does not necessarily mean that her inattentiveness is the sole proximate cause of her injury. *De Los Santos v. State*, 290 A.D.2d 271, 271, 736 N.Y.S.2d 330, 331 (2002); *See also Kurth v. Wallkill Assocs.*, 132 A.D.2d 529, 530, 517 N.Y.S.2d 267 (1987); *Wilder v. Rensselaer Polytechnic Inst.*, 175 A.D.2d 534, 535, 572 N.Y.S.2d 795, 796 (1991). Therefore, the cause of Plaintiff's injury is properly determined by a jury.

## CONCLUSION

Defendant's motion for summary judgement is denied.

Dated: July 25, 2023
New York, New York

U.S.D.J.

BY ECF TO ALL COUNSEL

13